## John McKindley *vs.* John H. Drew.

October Term, 1896.

Present: Taft, Rowell, Tyler, Munson, Start and Thompson, JJ.

*Measure of Damages—Fraud in Sale of Policy—Evidence.*

In an action of tort against an insurance agent for inducing the plaintiff to take a policy by fraudulent misrepresentations concerning its provisions, the measure of damages is not the difference in value between the policy as it was and as it was represented to be, but the difference between the amount of premiums paid by the plaintiff and the value to him of the insurance while it remained in force.

The plaintiff was properly allowed to show his own ignorance of insurance and the defendant's familiarity therewith as tending to show that he was actually deceived by the defendant's representations.

It was competent for the plaintiff to show the amount of the commission which the defendant was entitled to receive, and that he was working for a prize offered by the company to the agent who should return the largest amount of insurance,—the defendant being a witness in his own behalf.

The fact that the defendant, within three months before the interview in question, had taken a large number of applications for insurance was admissible as making it less probable that he would remember the details as distinctly as the plaintiff.

The defendant offered to show by a witness, who was a policy holder in the same company, that the plaintiff came to the witness with the agent of another insurance company and asked him whether he would throw up his policy if such agent would bring a suit for him to recover the premiums he had paid. *Held*, that the evidence was properly excluded.

The defendant on the occasion in question used a book furnished by the company showing the amount of surplus on different classes of policies for one thousand dollars, from which the plaintiff claimed the defendant computed the amount of the surplus which would belong to the plaintiff's policy. It being somewhat uncertain from what pages the defendant figured, *held*, that the plaintiff had a right to exhibit in evidence any page that related to such surplus.

Action on the case. Plea, not guilty. Trial by jury at the June Term, 1895, Caledonia County, *Ross*, C. J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The declaration was drawn in the double phase of contract and tort, but the plaintiff claimed to recover only upon the tort phase.

The book of instructions from the company, which the defendant used when he solicited the plaintiff, was produced by him in court and the plaintiff was allowed to introduce several pages relating to estimates of surplus upon policies like the one in question in respect to the age of the insured and the term and general character of insurance. The estimates were based upon policies of one thousand dollars and the plaintiff's testimony tended to show that the defendant obtained the amount of the surplus which the policy would guarantee to the plaintiff by multiplying the amount stated in the book. To the admission of these pages the defendant excepted.

The defendant offered to show by Fremont Nelson, who had also taken a policy in the New York Mutual Life Insurance Company at the solicitation of the defendant, that the plaintiff came to him with Mr. Way, an agent for another insurance company, and asked the witness whether he would throw up his policy if Mr. Way would bring a suit for him to recover the premiums he had paid. The court excluded the testimony and the defendant excepted.

*Bates & May, Dunnett & Slack* and *Harry Blodgett* for the defendant.

The evidence of the plaintiff, as to his own ignorance of life insurance and the defendant's familiarity therewith, was incompetent. It did not appear that the defendant was aware of the plaintiff's ignorance. There was no relation of confidence between the parties.

The court improperly admitted evidence touching the amount of the defendant's commission and the prize offered by the company. If the defendant's intent had been in question a different rule might have been correct, but his intent was immaterial. *Haycraft* v. *Creasy*, 2 East. 92; Cooley, Torts, 474. It cannot be said that the evidence was

admissible as making it more probable that the defendant would misrepresent, since this would require a second presumption, viz, the defendant's dishonesty.  Stephens' Dig. Ev. art. 9.

The plaintiff should have been confined to those pages of the instruction book which were clearly the subject of discussion between the parties.

The court should have admitted the evidence offered by the defendant by Fremont Nelson.

The charge of the court upon the measure of damages was incorrect.

*W. P. Stafford* for the plaintiff.

The plaintiff was properly allowed to show his own ignorance of insurance matters, because this helped to show that he was in fact deceived, and to show the defendant's familiarity with such matters, because this helped to show that the defendant deceived him purposely.  The defendant's intent was certainly material upon the question of exemplary damages.

It was proper to show the defendant's motive to misrepresent by way of his commission and the pending prize.

There was no error in admitting the several pages of the instruction book.  The plaintiff had a right to put in such pages as his evidence tended to prove might have been shown him.  If they did not support his claim they did not injure the defendant.

The Fremont Nelson evidence was properly excluded. *Norton* v. *Gleason*, 61 Vt. 474.

The measure of damages was correctly stated to be such a sum as would make the policy delivered equal to the policy sold. *Bowman* v. *Parker*, 40 Vt. 410.  That the subject of sale was a contract instead of some other thing does not alter the rule.  The declaration is in the form approved in *Beeman* v. *Buck*, 3 Vt. 53, and *Goodenough* v. *Snow*, 27 Vt. 720.  The plaintiff would have been entitled to a verdict upon proving the warranty and breach, without proving

the purpose to deceive.    He chose to treat his case as one in tort and to have the rule applied which requires proof of the intention to deceive.    But the measure of damages was the same in either case.

TYLER, J.  The plaintiff's evidence tended to show that the defendant, by false and fraudulent representations, induced him, for an annual premium of $262.50, to take a $5,000 endowment policy in the N. Y. Mutual Life Insurance Co., with a right to whatever surplus the policy might be entitled to under the rules of the company; that the policy was payable in twenty years, or at an earlier time in the event of the plaintiff's death, he having a right to withdraw at any time after making three payments, when he would receive a paid up policy for as many twentieths of the $5,000 as he had made payments; that the fraudulent representations were, that the surplus which was to apply upon the policy was guaranteed by the company to be $4,800, and that if the plaintiff withdrew he would receive his twentieths in cash; that he paid the first premium on the delivery of the policy and the second a year thereafter, when, on account of the fraud, he decided to make no further payment and brought this suit.

The defendant denied making the fraudulent representations.

On the trial the plaintiff abandoned the contract phase of his declaration and claimed to recover only upon the ground of fraud.

(1)  The court did not err in permitting the plaintiff to show his own ignorance of life insurance and the defendant's familiarity therewith.    It tended to show that he relied upon the defendant's representations and was deceived by them.

(2)  It was competent for the plaintiff to show that the defendant was entitled to receive from the company a part of the first premium, and that he was working for a prize that had been offered by the company to the agent who would return the largest amount of insurance.    The defend-

ant was a witness in his own behalf, and it was proper to show his interest in the matter in issue.

(3)   The fact that the defendant had, within three months, taken a large number of applications for insurance might render it less probable that he would remember as distinctly as the plaintiff the details of the interview in question; therefore evidence of that fact was properly admitted.

(4)   The offered testimony of Nelson was properly excluded as having no relevancy to the question in issue.

(5)   It was not error to admit the several pages of the instruction book. The defendant used the book on the occasion in question, and the plaintiff claimed that the defendant showed him some pages from which he figured a $4,800 surplus on a $5,000 policy. The plaintiff had a right to exhibit in evidence any page that related to the subject matter of such surplus. The other pages were of course immaterial. It did not seem clear what pages the defendant figured from, which probably led to the examination of several pages mentioned in the exceptions.

(6)   The court instructed the jury that if they found either of the claimed misrepresentations set forth in the declaration established, the plaintiff would be entitled to recover such damages as would make the policy of the value it would have had if it had been as represented. In this there was error.   This would have been the rule had the plaintiff elected to proceed under the contract, which he might have done.   But he was not bound to perform the terms of a contract to which he never gave his assent—to pay annual premiums upon a policy which he did not purchase.   The fraud invalidated the contract, and upon its discovery the plaintiff had a right to rescind it and be placed *in statu quo*.

No point is made in the brief of defendant's counsel, nor was it raised in the court below, that the plaintiff should have expressly refused to make further payments and returned the policy.   The contract was executory, and upon discovery of the fraud the plaintiff had a right to repudiate

it and treat it as a nullity. His acts were a repudiation and a rescission of the contract.

The only question is, what damages is the plaintiff entitled to recover? The general rule is that the party who would rescind a contract on account of the fraud practiced upon him by the other party must seasonably return the property to him and put him *in statu quo*. If the plaintiff in this case had received dividends upon his policy the law would not permit him to recover the premiums and retain the dividends, for then the other party would not be placed *in statu quo*. The plaintiff had received no dividends to be returned, but he had been insured for a year and a half before he rescinded the contract, and if he had died within that time his estate would have received $5,000 from the insurance company; so it cannot be held as matter of law that he had received no benefit from the contract. The case should have been submitted to the jury with instructions that the plaintiff might recover the amount of premiums paid less the value, if any, of the insurance which he received. What value the insurance was to him was for the jury to determine.

The case of *Hedden* v. *Griffin*, 136 Mass. 229, is like the one at bar. There the defendant, as a general agent of a life insurance company, by false and fraudulent representations induced the plaintiff to take a policy in the company. Upon discovering the fraud the plaintiff gave the defendant notice of his rescission of the contract, demanded a return of the premiums paid and brought the suit therefor. The court refused to instruct the jury that the rule of damages was the difference in money value between what the plaintiff got and what he would have got had the representations been true, but did instruct them that upon the rescission of the contract the plaintiff should recover the amount of money paid less the value of the insurance, if any, which he had received. The supreme court sustained the ruling and afterwards reaffirmed its soundness in *Nash* v. *Minn. Title*

*Ins. & Trust Co.*, 163 Mass. 574, though it referred to an intimation made by the court in the former case that the plaintiff might recover the whole consideration paid without any deduction for the protection which he had before the rescission. These rulings are in accordance with the general rule of law requiring a return of the property on the rescission of a contract on account of fraud.

*Judgment reversed and cause remanded.*